[Cite as *Kamnikar v. Fiorita*, 2017-Ohio-5605.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| David Kamnikar et al., | : | |
| Plaintiffs-Appellants, | : | No. 16AP-736 |
| v. | : | (C.P.C. No. 14CVH07-7708) |
| Cameron Fiorita et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on June 29, 2017

**On brief:** *Law Offices of James P. Connors*, and *James P. Connors*, for appellants. **Argued:** *James P. Connors*.

**On brief:** *Hollern & Associates*, and *Edwin J. Hollern*, for appellees Cameron, Robert, and Kristin Fiorita. **Argued:** *Edwin J. Hollern*.

**On brief:** *Lane Alton*, *Rick E. Marsh*, and *Eric S. Bravo*, for appellee Encompass Home & Auto Insurance Company. **Argued:** *Rick E. Marsh*.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiffs-appellants, David and Laurie Kamnikar, and their minor son, Jack (collectively "Kamnikars"), appeal from a judgment of the Franklin County Court of Common Pleas in favor of defendants-appellees, Cameron, Robert, and Kristin Fiorita (collectively "Fioritas") and Encompass Home & Auto Insurance ("Encompass"). For the reasons that follow, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   This case arises out of a minor motor vehicle accident that occurred in the parking lot of the Chiller Skating Rink ("Chiller") in Dublin, Ohio on January 24, 2014. On that evening, a Cadillac Escalade operated by Cameron Fiorita and owned by his father, Robert Fiorita, struck a Toyota Corolla parked in the Chiller lot.  David and Laurie Kamnikar had driven to the Chiller in their Corolla to pick up their son, Jack Kamnikar, who had been skating at the ice rink.  David was driving the Corolla with Laurie in the passenger seat.  Jack left the ice rink and climbed in the back seat.  The Kamnikars remained in the vehicle while Jack texted a friend, who was still in the rink, to see if she could find a hat that Jack had left at the rink.  At or around that same time, Cameron arrived at the Chiller in the Escalade to pick up two girls, one believed to be his sister.

{¶ 3}   At approximately 9:45 p.m., while Jack was texting his friend, Cameron drove the Escalade into the back of the Corolla.  According to the Kamnikars, Cameron apologized to David and acknowledged he was at fault for hitting a parked vehicle.  The complaint states that Cameron told a Dublin police officer at the scene that he did not see the Kamnikars' vehicle because he was either "texting, playing with his phone, or not paying attention."  (Compl. at 3.)  Because the accident took place in a private parking lot, the police officer did not make a written report, but he told the parties to exchange insurance information.

{¶ 4}   As David waited in the Chiller lobby to obtain insurance information, Cameron called his parents.  When Cameron returned, he provided David with information he retrieved from the Escalade identifying Westfield Insurance Company ("Westfield") as the Fioritas' insurance carrier.

{¶ 5}   When David contacted Westfield in order to submit a claim, he learned that Westfield no longer insured the Fioritas' vehicle. A representative of Encompass subsequently contacted David to inform him that Encompass insured the Fioritas' Escalade.  David orally submitted a claim to Encompass and provided a recorded statement.  On February 11, 2014, the Kamnikars received a letter from Encompass stating that "[a]fter careful investigation, we have found that our insured was not legally responsible for the accident.  As a result, we will not be able to make any payment for the

following reasons: You failed to y[ie]ld the right of way to passing vehicle as you were backing from a parking spot." (Compl. at 5.)

{¶ 6} According to the complaint, the investigation conducted by Encompass consisted of speaking with Kristin about the accident and reviewing the report of the appraiser. The complaint alleges that Encompass failed to interview either Cameron, his two female passengers, or the Dublin police officer. The complaint states that when David contacted Encompass to question the denial of his claim, an Encompass representative told David to file a claim with his own insurance company.

{¶ 7} The Kamnikars subsequently obtained legal counsel who, on February 25, 2014, contacted Encompass seeking to obtain copies of any "investigation materials" related to the Kamnikars' claim and an explanation of the denial of the claim. (Compl. at 7.) Encompass responded by referring counsel to the February letter denying the Kamnikars' claim and explaining that Encompass's internal policy was not to share their investigative materials with claimants. When the Kamnikars' counsel sought to obtain a copy of the internal policy referred to in the previous communication, he received a response from an Encompass "supervisor" explaining that internal Encompass policies are not shared with others and that the investigation into the accident revealed that "[t]he two drivers are telling opposing stories and, in our opinion, the physical damage favors our client." (Compl. at 8.)

{¶ 8} On July 24, 2014, the Kamnikars commenced a civil action against Encompass and the Fioritas. On October 3, 2014, Encompass filed a motion, pursuant to Civ.R. 12(B)(6), seeking a dismissal of the claims brought against it by the Kamnikars. On November 24, 2014, the trial court issued a decision and judgment entry granting the motion to dismiss and dismissing each of the Kamnikars' claims against Encompass with prejudice.

{¶ 9} On September 24, 2015, the trial court scheduled a jury trial in the matter for March 16, 2016. On February 22, 2016, during the discovery process, the Kamnikars produced a videotape recording of the accident captured on the Chiller security camera. The Fioritas, after viewing the videotape, filed the following stipulation:

> Defendant, Cameron Fiorita, by and through counsel, hereby
> stipulates that he was negligent and is therefore liable for the

> damages that are found by the jury to be proximately caused by his negligence that arise out of the January 24, 2014 accident that is the subject of plaintiffs' Complaint. The issues of proximate cause and damages, if any, are specifically reserved for the jury to determine.

(Mar. 6, 2016 Stipulation.)

{¶ 10} On March 10, 2016, the trial court rescheduled the jury trial for August 16, 2016. On August 9, 2016, the Fioritas filed a motion for judgment on the pleadings, pursuant to Civ.R. 12(C), as to the following claims: negligent misrepresentation and fraud (Count One of the complaint); bad faith, lack of good faith and fair dealing, and civil conspiracy (Count Four of the complaint); and negligent entrustment asserted against Kristin and Robert (Count Three of the complaint). On August 13, 2016, the Kamnikars moved the trial court, pursuant to Civ.R. 37(C)(2), for legal fees and expenses arising from the Fioritas' misconduct in failing to admit matters that were the subject of the Kamnikars' request for admissions.

{¶ 11} On the morning of trial, the trial court heard arguments on the pending motion for judgment on the pleadings. At the close of those proceedings, the trial court announced its decision to grant the motion. As a result of the ruling, the only claim remaining for trial was the negligence claim against Cameron asserted in Count Two of the complaint and only as to the issue of damages.

{¶ 12} The case was tried to a jury on August 16, 2016. On August 17, 2016, the jury rendered a verdict in favor of the Kamnikars as to their negligence claim against Cameron and awarded damages of $3,087.05. On September 21, 2016, the trial court issued a judgment entry in favor of the Kamnikars and against Cameron in the total amount of $3,087.05, plus court costs. The trial court denied the Kamnikars' motion for sanctions on October 6, 2016 in an entry stating "[t]here is no basis in law or fact upon which the Court would award Plaintiffs legal fees and expenses in this matter." (Oct. 6, 2016 Decision and Entry at 1.)

{¶ 13} On October 21, 2016, the Kamnikars appealed to this court from the November 24, 2014 decision granting Encompass's motion to dismiss, the August 16, 2016 decision granting the Fioritas' motion for judgment on the pleadings, and the October 6, 2016 decision denying the Kamnikars' motion for fees and expenses. On

January 23, 2017, Encompass filed an App.R. 23 motion for sanctions against the Kamnikars and their legal counsel alleging that this is a frivolous appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 14} The Kamnikars assert the following assignments of error:

> I. THE TRIAL COURT ERRED BY DISMISSING THE CASE AND ALL CLAIMS AGAINST ENCOMPASS PURSUANT TO CIV.R. 12(B)(6).
>
> II. THE TRIAL COURT ERRED BY GRANTING JUDGMENT ON THE PLEADINGS AND DISMISSING ALL CLAIMS AGAINST DEFENDANTS ROBERT AND KRISTIN FIORITA, AND ALL CLAIMS OTHER THAN FOR NEGLIGENCE AGAINST CAMERON FIORITA, PURSUANT TO CIV.R. 12(C).
>
> III. THE TRIAL COURT ERRED BY DENYING PLAINTIFFS' MOTION FOR LEGAL FEES AND EXPENSES FOR FAILURE TO ADMIT, PURSUANT TO CIV.R. 37(C)(2), AND BY GRANTING LEAVE TO THE FIORITAS TO RESPOND TO THE MOTION OUT OF RULE.

## III. LEGAL ANALYSIS

### A. First Assignment of Error

{¶ 15} In their first assignment of error, the Kamnikars argue that the trial court erred when it dismissed their claims against Encompass alleging negligent misrepresentation and fraud (Count One of the complaint), bad faith, lack of good faith and fair dealing, and negligence (Count Four of the complaint). We disagree.

{¶ 16} Under Civ.R. 12(B)(6), a defendant may move to dismiss a complaint for failure to state a claim on which relief can be granted. *Henton v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 16AP-768, 2017-Ohio-2630, ¶ 6, citing *Coleman v. Columbus State Community College*, 10th Dist. No. 15AP-119, 2015-Ohio-4685, ¶ 6. " 'A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint.' " *Henton* at ¶ 6, quoting *Rudd v. Ohio State Hwy. Patrol*, 10th Dist. No. 15AP-869, 2016-Ohio-8263, ¶ 11.

{¶ 17} In reviewing a motion to dismiss, pursuant to Civ.R. 12(B)(6), the court may not rely on allegations or evidence outside the complaint. *Henton* at ¶ 6. "In considering

the complaint, the court 'must construe the complaint in the light most favorable to the plaintiff, presume all factual allegations in the complaint are true, and make all reasonable inferences in favor of the plaintiff.' " *Id.* at ¶ 7, quoting *Coleman* at ¶ 6, citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). "However, the court need not accept as true any unsupported and conclusory legal propositions advanced in the complaint." *Henton* at ¶ 7, citing *Rudd* at ¶ 12, citing *Morrow v. Reminger & Reminger Co., LPA*, 183 Ohio App.3d 40, 2009-Ohio-2665, ¶ 7 (10th Dist.). "The dismissal of a complaint for failure to state a claim is proper when it appears, beyond doubt, that the plaintiff can prove no set of facts entitling him to relief." *Henton* at ¶ 7, citing *Rudd* at ¶ 11, citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus. An appellate court reviews a trial court's dismissal, pursuant to Civ.R. 12(B)(6), under a de novo standard of review. *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State*, 146 Ohio St.3d 315, 2016-Ohio-478, ¶ 12.

{¶ 18} Both Count One and Four of the complaint allege that Encompass breached a duty it owed to the Kamnikars by failing to conduct a thorough investigation of the accident before denying their claim, by failing to share the results of the investigation with their counsel, and by encouraging the Kamnikars to file an insurance claim with their own insurance carrier even though such a claim was unsupported by the facts. The trial court's ruling on the motion to dismiss reads, in relevant part, as follows:

> Upon reviewing Encompass's motion, it is clear to the Court that it must dismiss Plaintiffs' claims against it. While stated as two separate claims, Plaintiffs' claims against Encompass are the same. Plaintiffs try to argue that their negligent misrepresentation/fraud claim against Encompass is distinct, but that is just not the case. Both of Plaintiffs' claims stem from Encompass' alleged bad faith in denying Plaintiffs' claim. It can be stated in different ways and different words can be used, but a third-party bad faith claim will always be a third-party bad faith claim. Unfortunately for Plaintiffs, [i]t is well established that Ohio does not recognize a claim of third-party bad faith. Since this is so, Plaintiffs' claims against Encompass must be dismissed.

(Nov. 24, 2014 Decision and Entry at 3.)

{¶ 19} We agree with the trial court's analysis and conclusion. Though the Kamnikars insist that the set of facts alleged in their complaint support relief under several different legal tort theories, the subjective belief of the party or counsel is not the standard for determination of whether a pleading states a claim for relief under existing law or a good-faith extension of existing law. *Fed. Natl. Mtge. Assn. v. Schmidt*, 10th Dist. No. 14AP-844, 2015-Ohio-2659.

### 1. Bad Faith

{¶ 20} "Under Ohio law, an insurer has a duty to act in good faith in the processing and payment of valid claims of its insured." *Beever v. Cincinnati Life Ins. Co.*, 10th Dist. No. 02AP-543, 2003-Ohio-2942, ¶ 20, citing *Petrone v. Grange Mut. Cas. Co.*, 9th Dist. No. 20909, 2002-Ohio-3746. The Supreme Court of Ohio held that "[a]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552 (1994), paragraph one of the syllabus.

{¶ 21} "If an insurer improperly refuses to pay a valid claim, such failure may amount to insurance 'bad faith.' " *Beever* at ¶ 20, citing *Stefano v. Commodore Cove E., Ltd.*, 145 Ohio App.3d 290, 293 (9th Dist.2001). An insurance company's refusal to pay a valid claim is not conclusive of bad faith, but if the insurer bases its refusal on a belief that there is no coverage for a particular claim, such belief may not be arbitrary or capricious. *Beever* at ¶ 20, citing *Petrone* at ¶ 12. Pursuant to *Zoppo*, an insurance company's failure to properly investigate a claim against its insured may also give rise to a bad-faith claim against the insurer. *Beever* at ¶ 41.

{¶ 22} Ohio courts have generally held that the tort of bad faith is " 'independent of the contract of insurance.' " *Id.* at ¶ 50, quoting *United Dept. Stores Co. No. 1 v. Continental Cas. Co.*, 41 Ohio App.3d 72, 73 (1st Dist.1987). "The liability of the insurer in such cases does not arise from its mere omission to perform a contract obligation * * *. Rather, the liability arises from the breach of the positive legal duty imposed by law due to the relationships of the parties." *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276 (1983). Ohio law is clear, however, that an insurer's duty to act in good faith runs only from the insurer to the insured and a third party has no cause of action for bad faith against the tortfeasor's insurance company. *McLynas v. Karr*, 10th Dist. No. 03AP-1075,

2004-Ohio-3597, ¶ 29, citing *Murrell v. Williamsburg Local School Dist.*, 92 Ohio App.3d 92, 95 (12th Dist.1993).

{¶ 23} Based on the foregoing, there can be no doubt that the Kamnikars' complaint fails to state a claim for relief against Encompass for bad faith and lack of good faith and fair dealing.[1]   Accordingly, we hold that the trial court did not err when it dismissed those claims pursuant to Civ.R. 12(B)(6).

### 2.  Negligence

{¶ 24} The Kamnikars argue that the facts alleged in their complaint state a claim for relief against Encompass sounding in ordinary negligence.  We disagree.

{¶ 25} "The economic-loss rule generally prevents recovery in tort of damages for purely economic loss."  *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 2005-Ohio-5409, ¶ 6, citing *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 45 (1989); *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn.*, 54 Ohio St.3d 1, 3 (1990).  "The economic-loss rule stems from the principle that, '[i]n the absence of privity of contract between two disputing parties the general rule is "there is no * * * duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things." ' "  *Waverly City School Dist. Bd. of Edn. v. Triad Architects, Inc.*, 10th Dist. No. 08AP-329, 2008-Ohio-6917, ¶ 26, quoting *Floor Craft* at 3, quoting Prosser & Keeton, Law of Torts, Section 92, 657 (5th Ed.1984).

{¶ 26} Here, the Kamnikars allege that Encompass's negligence in failing to adequately investigate their claim against the Fioritas, improperly denying the claim, and carelessly advising the Kamnikars to file the claim against their own insurance carrier caused the Kamnikars to incur unnecessary costs and expenses associated with hiring counsel and pursuing legal action.  Because the Kamnikars seek recovery of a purely economic loss arising from Encompass's alleged negligence, the economic loss rule bars their negligence claim.

---

[1] The Kamnikars did not move the court for an award of prejudgment interest pursuant to R.C. 1343.03(C).

### 3. Restatement of Law 2d, Torts, Sections 323 and 324A

{¶ 27} The Kamnikars contend that their complaint states a claim for relief against Encompass under the rule of law expressed in Restatement of the Law 2d, Torts, Section 323 (1965), "Negligent Performance of Undertaking to Render Services," and Restatement of the Law 2d, Torts, Section 324A (1965), "Liability to Third Person for Negligent Performance of Undertaking." We disagree.

{¶ 28} Pursuant to Restatement of the Law 2d, Torts, Section 323, "[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, *is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking*, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking." (Emphasis added.) Similarly, Restatement of the Law 2d, Torts, Section 324A, provides as follows: "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, *is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking*, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking." (Emphasis added.)

{¶ 29} As previously stated, Encompass undertook the processing of the Kamnikars' personal injury and property damage claim for the benefit of their insured, the Fioritas, pursuant to a contract of liability insurance. The Kamnikars make no claim that they are a third-party beneficiary to the contract of insurance between Encompass and the Fioritas. *See Chitlik v. Allstate Ins. Co.*, 34 Ohio App.2d 193 (8th Dist.1973) (third-party claimants are merely incidental beneficiaries to a liability insurance contract). Nor have the Kamnikars cited any Ohio authority holding that a liability insurer may be held liable to a third-party claimant under Restatement of the Law 2d, Torts, Sections 323 or 324A. *See Bugg v. Am. Standard, Inc.*, 8th Dist. No. 84829, 2005-

Ohio-2613 (insurance defendant assumed no duty to the insured's work force, despite their knowledge of the risks associated with asbestos within the insured's premises).

{¶ 30} Moreover, liability may be imposed under the rule of law expressed in Restatement of the Law 2d, Torts, Sections 323 and 324A, only where the tortfeasor's negligence results in physical harm. *See Moore v. Covenant Care Ohio, Inc.*, 6th Dist. No. No. L-13-1259, 2014-Ohio-4113, ¶ 50-53 (summary judgment for third-party pharmaceutical provider reversed and cause remanded where injured nursing home residents presented evidence that the provider's negligence in failing to properly dispense and label medications caused physical harm to residents). Pursuant to the complaint, the harm to the Kamnikars arising from the alleged negligence of Encompass is the additional expense associated with hiring counsel to pursue their claim with Encompass and to prosecute this action. The only physical harm alleged in the complaint resulted from the motor vehicle accident, not the subsequent conduct of Encompass. Thus, the complaint fails to state a claim for relief against Encompass under the rule of law expressed in Restatement of the Law 2d, Torts, Sections 323 and 324A.

### 4. Fraud and Negligent Misrepresentation

{¶ 31} Though the Kamnikars' complaint also alleges claims of fraud and negligent misrepresentation against Encompass, the Kamnikars' appellate brief contains no argument in support of those claims. Nevertheless, because our review is de novo, we will address the dismissal of those claims herein. A prima facie case for fraud includes the following elements: (1) a representation material to the transaction, (2) made falsely, with knowledge of its falsity, or with utter disregard and recklessness regarding its truth or falsity, (3) with the intent to mislead another into reliance, (4) justifiable reliance on the representation or concealment, (5) and injury proximately resulting from such reliance. *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69 (1986), paragraph two of the syllabus. A negligent misrepresentation occurs when " '[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.' " *Delman v. Cleveland Heights*, 41 Ohio

St.3d 1, 4 (1989), citing 3 Restatement of the Law 2d, Torts, Section 552(1), at 126-27 (1965). Justifiable reliance and damages proximately caused by such reliance are elements of both torts. *Martin v. Ohio State Univ. Found.*, 139 Ohio App.3d 89, 104 (10th Dist.2000).

{¶ 32} The Kamnikars' claims for fraud and negligent misrepresentation allegedly arise from the conduct of Encompass in representing that Encompass had conducted a thorough investigation of the accident before denying the Kamnikars' insurance claim and advising the Kamnikars to file a claim with their own insurance carrier. However, as noted above, an insurance company's duty to conduct a good-faith investigation of the claim filed against its insured is a duty the insurer owes to its insured. *Zoppo*; *Beever.* It is not a duty the insurer owes to a third party. *Zoppo*; *Beever.* Moreover, the Kamnikars do not allege that they abandoned their claim against the Fioritas as a result of the representations made by Encompass or that they filed a claim with their own insurer in reliance on the advice of Encompass. Rather, the Kamnikars admit that they hired counsel to pursue their claim against Encompass's insured. Consequently, the complaint conclusively establishes that the Kamnikars did not rely on the advice provided by Encompass.

{¶ 33} For the foregoing reason, we hold that the trial court did not err when it granted Encompass's motion to dismiss the Kamnikars' claims against Encompass. Accordingly, the Kamnikars' first assignment of error is overruled.

### B.  Second Assignment of Error

{¶ 34}  In the Kamnikars' second assignment of error, the Kamnikars argue that the trial court erred when it granted the Fioritas' motion for judgment on the pleadings. We disagree.

{¶ 35} A motion for judgment on the pleadings "has been characterized as a belated Civ.R. 12(B)(6) motion for failure to state a claim upon which relief can be granted." *Easter v. Complete Gen. Constr. Co.*, 10th Dist. No. 06AP-763, 2007-Ohio-1297, ¶ 8, citing *Whaley v. Franklin Cty. Bd. of Commrs.*, 92 Ohio St.3d 574, 581 (2001). Pursuant to Civ.R. 12(C), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A motion for judgment on the pleadings is to be granted when, after viewing the allegations and

reasonable inferences therefrom in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. *Easter* at ¶ 8; *Brown v. Wood Cty. Bd. of Elections*, 79 Ohio App.3d 474, 477 (6th Dist.1992), citing *Peterson v. Teodosio*, 34 Ohio St.2d 161, 165-66 (1973). "A motion for judgment on the pleadings is specifically intended for resolving questions of law." *Easter* at ¶ 9, citing *Friends of Ferguson v. Ohio Elections Comm.*, 117 Ohio App.3d 332, 334 (10th Dist.1997). Appellate review of motions for judgment on the pleadings under Civ.R. 12(C) is de novo. *Perrysburg Twp. v. Rossford,* 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5.

{¶ 36} The record reveals that the trial court first considered the Fioritas' motion for judgment on the pleadings with counsel, in chambers, before announcing a decision from the bench prior to the commencement of the jury trial. Though the Kamnikars claim that the trial court failed to address all the claims asserted against the Fioritas, our review of the transcript reveals that the trial court ruled on each of the claims alleged in the complaint, albeit in a summary fashion. The trial court granted a judgment on the pleadings in favor of the Fioritas as to the claims for negligent misrepresentation and fraud, bad faith, negligent entrustment, negligence, and civil conspiracy.

### 1. Negligent Entrustment

{¶ 37} With regard to the claim of negligent entrustment, we note that in *Williamson v. Eclipse Motor Lines, Inc.*, 145 Ohio St. 467, 470 (1945), the Supreme Court explained that "liability may arise where an owner entrusts his motor vehicle, with permission to operate the same, to a person so lacking in competency and skill as to convert the vehicle into a dangerous instrumentality." According to the court in *Williamson*, "liability in such cases arises from the combined negligence of the owner and the driver; of the former in entrusting the machine to an incompetent driver, and of the driver in its operation." *Id.* at 471. "Liability for negligent entrustment arises 'from the act of entrustment of the motor vehicle, with permission to operate the same, to one whose incompetency, inexperience or recklessness is known or should have been known by the owner.' * * * Not only does the test require the owner to entrust the vehicle to the driver with permission to drive, but the driver must be one who is known to be incompetent, inexperienced or reckless." *Dowe v. Dawkins*, 10th Dist. No 93AP-860 (Dec. 23, 1993), quoting *Williamson* at paragraph two of the syllabus.

{¶ 38} The trial court determined that appellee Kristin Fiorita could not be held liable to the Kamnikars for negligent entrustment, as a matter of law, because she is not the titled owner of the Escalade. We agree. "In an action based upon negligent entrustment, the plaintiff bears the burden of establishing that 'the motor vehicle was driven with the permission and authority of the owner.' " *Fletcher Trucking v. Columbus Fair Auto Auction, Inc.*, 10th Dist. No. 94APE09-1394 (June 13, 1995), quoting *Gulla v. Straus*, 154 Ohio St. 193 (1950), paragraph five of the syllabus.

{¶ 39} With regard to the claim against Robert Fiorita, the complaint alleges insufficient facts to satisfy the *Williamson* test. The complaint alleges that Robert permitted his son Cameron to drive the Escalade on the night in question, that the vehicle is an SUV, and that Cameron is a "relatively inexperienced driver." (Compl. at 11.) The complaint does not reveal Cameron's age on the date of the accident, but the complaint acknowledges that Cameron is a licensed driver. In our view, the complaint does not allege facts which would permit a reasonable inference that Cameron's "relative[] inexperience[]" as a driver renders him so lacking in competency and skill as to convert the vehicle into a dangerous instrumentality. (Compl. at 11.) Additionally, the facts alleged in the complaint do not permit an inference that Robert knew that his son was an incompetent driver notwithstanding his licensure. Accordingly, the trial court did not err when it granted judgment on the pleadings as to the claim for negligent entrustment.

### 2. Fraud and Negligent Entrustment

{¶ 40} With regard to the claim for bad faith, the Kamnikars allege that the Fioritas breached a duty owed to them by "lying to Encompass and others about how the accident happened, * * * misle[ading] the Kamnikars about the identity of their insurance carrier at the time of the accident," and "wrongfully direct[ing] the Kamnikars to file a fraudulent insurance claim" with their insurer. (Compl. at 13.) The complaint also alleges that such conduct constitutes a violation of R.C. 2913.47(B) defining the criminal offense of "insurance fraud." The trial court determined that the Kamnikars' complaint failed to allege facts which would support a finding that they reasonably relied on the representations of the Fioritas. We agree.

{¶ 41} As noted above, the Kamnikars do not allege that they abandoned their claim against the Fioritas as a result of the representations made by the Fioritas either as

to the identity of their insurance carrier or Cameron Fiorita's negligence. Nor do they allege that they filed a claim with their own insurance carrier in reliance on the advice of the Fioritas. Rather, the Kamnikars acknowledge that they hired counsel to pursue their claim with Encompass and subsequently file this action against the Fioritas. Moreover, the accident occurred on January 24, 2014. Though the complaint does not state the exact date the Kamnikars learned that the Fioritas were insured by Encompass, the complaint alleges that the Kamnikars received a denial letter from Encompass dated February 5, 2014, less than two weeks after the accident. Thus, the complaint belies the Kamnikars' claim that they incurred a monetary loss as a result of the Fioritas' misrepresentation regarding the identity of their insurance carrier. Similarly, with regard to the alleged violations of R.C. 2913.47(B), we have determined that the Kamnikars' complaint fails to state a claim for relief against the Fioritas sounding in fraud.[2]

### 3. Civil Conspiracy

{¶ 42} Turning to the claim for civil conspiracy, we note that " '[c]ivil conspiracy' has been defined as 'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.' " *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419 (1995), quoting *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St.3d 121, 126 (1987), citing *Minarik v. Nagy*, 8 Ohio App.2d 194, 196 (8th Dist.1963). "Civil conspiracy is derivative in that the claim cannot be maintained absent an underlying tort that is actionable without the conspiracy." *Zhelezny v. Olesh*, 10th Dist. No. 12AP-681, 2013-Ohio-4337, ¶ 55, citing *Kenty* at 419, citing *LeFort* at 126. Having determined that the trial court did not err when it dismissed the claims for relief against Encompass and having further determined that the Fioritas are entitled to judgment on the pleadings as to the remaining tort claims, the Kamnikars' complaint fails to allege a claim for relief sounding in civil conspiracy.

{¶ 43} For the foregoing reasons, we hold that the trial court did not err when it granted the Fioritas' motion for judgment on the pleadings. Accordingly, the Kamnikars' second assignment of error is overruled.

---

[2] The economic loss rule bars the Kamnikars' negligence claim against the Fioritas. *Corporex* at ¶ 6; *Chemtrol* at 45; *Floor Craft* at 3.

### C. Third Assignment of Error

{¶ 44} In their third assignment of error, the Kamnikars argue that the trial court abused its discretion when it granted the Fioritas leave to respond to the Kamnikars' motion for sanctions, out of rule, and denied the Kamnikars' motion for fees and expenses allegedly incurred as a result of Cameron Fiorita's failure to admit that he was at fault for the accident.

{¶ 45} Civ.R. 37(C)(2) provides, in relevant part, as follows:

> Failure to admit.  If a party fails to admit what is requested under Civ.R. 36, and *if the requesting party later proves * * * the matter true*, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof.  The court shall so order unless:
>
> (a)  The request was held objectionable under Civ.R. 36(A);
>
> (b)  The admission sought was of no substantial importance;
>
> (c)  The party failing to admit had a reasonable ground to believe that it might prevail on the matter; or
>
> (d)  There was other good reason for the failure to admit.

(Emphasis added.)

{¶ 46} In *Salem Med. Arts & Dev. Corp. v. Columbiana Cty. Bd. of Revision*, 82 Ohio St.3d 193 (1998), the Supreme Court characterized the sanctions for a failure to admit as follows:

> A party may deny a request for admissions, but, upon motion pursuant to Civ.R. 37(C), improper denials may subject the responding party to sanctions.  *Whether such denials are subject to Civ.R. 37(C) sanctions depends upon whether the proof at trial contradicts the denial.  If the matters denied are proved at trial, then a court shall award sanctions* "unless the request had been held objectionable under Rule 36(A) or the court finds that there was good reason for the failure to admit or that the admission sought was of no substantial importance * * * ."  Civ.R. 37(C).  *See Itskin v. Restaurant Food Supply Co.* (1982), 7 Ohio App. 3d 127, 7 Ohio B. Rep. 161, 454 N.E.2d 583.

(Emphasis added.)  *Id*. at 195-96.

{¶ 47}  Even if we assume that Cameron Fiorita did not have reasonable grounds to deny fault for the accident, pursuant to *Salem Med. Arts & Dev. Corp.*, sanctions under Civ.R. 37(C)(2) are available to the Kamnikars only if the Kamnikars were required to produce evidence at trial contradicting Cameron's denials.  The Supreme Court made this point clear in *Salem Med. Arts & Dev. Corp.* when it stated:

> Requests for admissions, * * * are distinguishable from other discovery requests.  "In reality, [a request for admissions] is not a discovery procedure but is a procedure used to narrow the issues and to eliminate unnecessary proof at trial by obtaining the admission of facts known to the party requesting the admissions and concerning that upon which there should be no issue."  McCormac, Ohio Civil Rules Practice (2 Ed.1992) 287, Section 10.56.  *Civ.R. 37(C) sanctions are in effect reimbursement for the expense incurred in forcing issues to be tried that should have been resolved before trial.*

(Emphasis added.)  *Id*. at 197.

{¶ 48}  Here, the Fioritas admitted Cameron's negligence prior to trial.  The trial court denied the Kamnikars' motion for sanctions stating "[t]here is no basis in law or fact upon which the Court would award Plaintiffs legal fees and expenses in this matter." (Oct. 6, 2016 Decision and Entry.)  Because the Kamnikars were not required to produce evidence at trial contradicting Cameron's denial, the event triggering sanctions under Civ.R. 37(C)(2) did not occur.  Similarly, because the Kamnikars' motion for fees and expenses was meritless on its face, no prejudice arose from the trial court's decision to permit the Fioritas to file an untimely response to the motion.  Based on the foregoing, we hold that the trial court did not err when it denied the Kamnikars' motion for fees and expenses associated with the Fioritas' failure to admit.  Accordingly, the Kamnikars' third assignment of error is overruled.

### D.  Frivolous Appeal

{¶ 49}  Having overruled each of the Kaminikars' assignments of error, we turn to Emcompass's motion seeking monetary sanctions against the Kamnikars and their counsel for prosecuting a frivolous appeal.

{¶ 50} App.R. 23, entitled "[d]amages for delay," permits this court, in the exercise of its discretion, to require an appellant to pay reasonable expenses, including reasonable attorney fees, if we "determine that an appeal is frivolous." *In re Christ Hosp.*, 10th Dist. No. 93AP-800 (Oct. 18, 1994). "An appeal is frivolous if it presents no reasonable question for review." *Bonn v. Bonn*, 10th Dist. No. 14AP-967, 2015-Ohio-3642, ¶ 29, citing *Smith-Evans v. Lavelle*, 10th Dist. No. 09AP-787, 2010-Ohio-1074, ¶ 15. This court has found an appeal to be frivolous where arguments made in support of an assignment of error are unwarranted under existing law. *Cooke v. United Dairy Farmers, Inc.*, 10th Dist. No. 05AP-1307, 2006-Ohio-4365, ¶ 57. In determining whether a party or counsel has engaged in frivolous conduct, the subjective belief of the party or counsel is not the standard for determination of whether an assignment of error is warranted under existing law or a good-faith extension of existing law. *See Patton v. Ditmyer*, 4th Dist. No. 05CA12, 2006-Ohio-7107, ¶ 104.

{¶ 51} Here, Encompass requests attorney fees on the basis that the assignments of error asserted by the Kamnikars are completely without merit as they pertain to the dismissal of the claims against Encompass and the motion for fees and expenses filed by the Kamnikars in the trial court. We have determined that the Kamnikars' assignments of error are meritless, and we affirmed the trial court's decisions on all matters. However, in our discretion and considering all the facts and circumstances of this case, we do not conclude that monetary sanctions are appropriate. *See Weinstock v. McQuillen*, 10th Dist. No. 09AP-539, 2010-Ohio-1071, ¶ 15; *Nyamusevya v. Nkurunziza*, 10th Dist. No. 10AP-857, 2011-Ohio-2614, ¶ 25. Accordingly, we deny Encompass's motion for sanctions.

## IV. CONCLUSION

{¶ 52} Having overruled the Kamnikars' three assignments of error and having denied Encompass's motion for sanctions, we affirm the judgment of the Franklin County Court of Common Pleas.

*Motion for sanctions denied*;
*judgment affirmed.*

BROWN and HORTON, JJ., concur.

_____